UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEAN LUNA LLANTO,

      Plaintiff,

   – against –

ABDEL NASSAR KEMEL SHETA ESMAIL, and
ABIR ANIS ABOUELFATH,
      Defendants.

No.

COMPLAINT

Jury Trial Demanded

  Plaintiff, Jean Luna Llanto ("Ms. Llanto" or "Plaintiff"), by and through her counsel, The

Legal Aid Society and Freshfields Bruckhaus Deringer US LLP, for her Complaint against

Defendants Abdel Nassar Kemel Sheta Esmail ("Mr. Sheta") and Abir Anis Abouelfath ("Mrs.

Sheta" and, together with Mr. Sheta, "the Shetas" or "Defendants"), respectfully alleges upon

knowledge as to herself and her acts, and upon information and belief as to all other matters, as

follows:

## PRELIMINARY STATEMENT

  1.  The Shetas trafficked Ms. Llanto into the United States from Qatar and forced

her to work for them at extreme hours for almost no pay. Ms. Llanto worked in the household of

Defendants for over 14 months and was subject to physical abuse and psychological coercion, in

violation of anti-trafficking laws and her federal and state employment rights.

  2.  Defendants knowingly and willfully lured Ms. Llanto from Qatar to the

United States with false representations of a specific wage and reasonable working conditions.

Ms. Llanto worked in Qatar in order to support her child and other family living in the

1

Philippines. She agreed to move to the United States with the expectation of a continued ability to financially support them.

3.     Ms. Llanto was not paid or treated in the manner agreed between the parties. Instead, to keep Ms. Llanto from leaving their employ, Defendants confiscated Ms. Llanto's passport and subjected her to forced labor, physical abuse, and psychological coercion in their household. Defendant Mrs. Sheta told Ms. Llanto that she would be arrested by the police if she left the Shetas' residence, told Ms. Llanto she was monitoring her movements within the house, and, along with Defendant Mr. Sheta, restricted and monitored all of Ms. Llanto's communications with others.

4.     While working for Defendants, Ms. Llanto was generally forced to work between 17 and 21 hours a day, 7 days a week. Despite agreeing to pay Ms. Llanto regularly, Defendants only made five payments of 900 Qatari Riyals ("Riyal") during the entire period of her employment, which is the equivalent of US$ 1,235.  These payments were sent directly to Ms. Llanto's family in the Philippines and not to Ms. Llanto.

5.     The Shetas required Ms. Llanto to clean the Defendants' house, care for their seven children, cook, and do laundry for the entire family. During this time, Ms. Llanto was regularly prevented from sleeping during the night in order to care for the Shetas' young children and was physically and verbally abused by Defendant Mrs. Sheta. Defendant Mrs. Sheta would often call Ms. Llanto "stupid" and "slow" in front of guests, would throw items at her in anger, and would painfully pinch her on the arms, resulting in bruising that would last for weeks.

6.     After 14 months of working for the Shetas and suffering this abuse, Ms. Llanto was liberated by federal agents and officers of the New York Police Department.

7. Ms. Llanto seeks redress for harm caused to her by Defendants' unlawful conduct under the Trafficking Victims Protection Reauthorization Act and for Defendants' violations of the Fair Labor Standards Act, New York Labor Laws and common law.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1351. Plaintiff brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPA"), 18 U.S.C. § 1595(a).

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

11. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12. Plaintiff Jean Luna Llanto is a citizen of the Philippines. At all times relevant to this action, Ms. Llanto worked for Defendant Abdel Nassar Kemel Sheta Esmail ("Mr. Sheta") in his residence in Doha, Qatar and for Defendant Mr. Sheta and his wife, Abir Anis Abouelfath ("Mrs. Sheta") in their residence in Staten Island, New York.

13. Upon information and belief, Defendants are citizens of Qatar and maintain a residence within the United States. During the course of Ms. Llanto's employment by

Defendants in the United States, Defendants resided in Staten Island, New York. Upon

information and belief, Defendants returned to Doha, Qatar in or about December 2014.

14. At the outset of the events that gave rise to this Complaint, Ms. Llanto first

worked for Defendant Mr. Sheta in his home in Doha, Qatar. On or about October 4, 2013, Ms.

Llanto was admitted to the United States on a B-1 visa that was provided to her by Mr. Sheta in

order to work for the Shetas in the United States. Ms. Llanto then resided in New York, New

York from this point forward and at all other times relevant to this action, and she continues to

reside in New York, New York.

15. At all times relevant to this action, Ms. Llanto was a domestic worker

employed by Defendants as defined by the Fair Labor Standards Act and New York Labor Law.

## STATEMENT OF FACTS

16. Ms. Llanto was born in Del Gallego, Camarines sur, Philippines. Ms. Llanto

speaks Tagalog as her native language and has only basic proficiency in English.

17. In 2011, her son was born. In order to provide for her son, Ms. Llanto sought

work with a recruiting agency. Through this agency, Ms. Llanto received a job as a babysitter for

a family in Doha, Qatar in the summer of 2012. Ms. Llanto was paid 900 Riyal per month and

worked with this family until late September 2013.

### Recruitment and Trafficking to the United States

18. In late September 2013, Ms. Llanto was asked by her employer to clean the

house of a family friend, Defendant Mr. Sheta. Ms. Llanto agreed and lived in Mr. Sheta's house

for a week cleaning his house. During this time, Ms. Llanto worked reasonable hours and under

reasonable conditions, and was not subjected to the abuse she would later experience in the

4

United States. She was paid 900 Riyal (approximately US$ 247) by Mr. Sheta for the week that she worked to clean his house.

19.     While Ms. Llanto was working for Mr. Sheta, Ms. Llanto was informed that she would not be returning to her former employer's house and would instead continue working for Mr. Sheta in the United States. Ms. Llanto believed that this was a good opportunity to earn money to provide for her family in the Philippines. Ms. Llanto was not told at this time that her conditions of work would be different than what she was previously experienced working for the Shetas. Ms. Llanto reasonably believed that she would continue to work reasonable hours in an acceptable working environment for 900 Riyal per week while in the United States.

20.     Upon information and belief, Mr. Sheta caused Ms. Llanto to obtain a B-1 working visa for Ms. Llanto to enter the United States. Upon information and belief, Mr. Sheta submitted, either directly or through an intermediary, an employment contract in order to obtain this B-1 Visa for Ms. Llanto that included the following representations: that Ms. Llanto would have at least one regular day off per week, a rate of pay that was at least the minimum wage per hour under United States federal law, a certification that he would not withhold her passport, and a certification that she would not be required to remain on the premises after working hours without compensation. No one at the U.S. Embassy in Qatar interviewed Ms. Llanto for the B-1 Visa.  She went to the Embassy only once to have her fingerprints taken.

21.     Ms. Llanto was provided with a ticket to fly to New York on October 4, 2013 by Mr. Sheta. Mr. Sheta received Ms. Llanto's passport directly from her former employer. Ms. Llanto was only provided her passport for the duration of this trip.

**Forced Labor, Abuse, and Isolation in the United States**

22.     Upon her arrival to the United States, Ms. Llanto was met by Mr. Sheta's brother-in-law and driven to the Shetas' home in Staten Island. This was Ms. Llanto's first time in the United States.

23.     Ms. Llanto was instructed to call Mr. Sheta's wife, Defendant Mrs. Sheta, "Madam." Mrs. Sheta told Ms. Llanto that she would be working the job of two housemaids to clean the house and care for the Sheta's six children, and would therefore be paid a double salary of 1800 Riyal per week (approximately US$ 494). She was not provided any information, either verbally or in writing, about her rights as a domestic worker or about the federal and state labor laws applicable to her employment. Ms. Llanto was not given a hiring notice explaining her rate of pay. Ms. Llanto was the only domestic worker in the house.

24.     The evening of her arrival, Mrs. Sheta confiscated Ms. Llanto's passport. Shortly after, Mrs. Sheta also told Ms. Llanto that, if Ms. Llanto were to leave the house, the police would arrest Ms. Llanto.

25.     Ms. Llanto began working from approximately 6 AM each morning to approximately 11 PM or 12 AM each night cleaning the house, caring for the children, cooking dinner several nights a week, and handling the laundry for the entire family. On a regular basis, Defendants would have guests at their house, and Ms. Llanto was expected to help entertain Mr. Sheta's guests, and would work until 1 or 2 AM on those occasions as a result. Ms. Llanto slept in a room with the Shetas' two-year-old child, whom she cared for 24 hours a day. Ms. Llanto also cared for the Shetas' 6-month-old child during the night on a regular basis.

26.     Ms. Llanto was never provided a day off from work during her employment and was restricted from leaving the house unaccompanied. Ms. Llanto was only permitted to

leave the house to run errands with Mrs. Sheta. Ms. Llanto was also told by Mrs. Sheta that there were cameras throughout the house, and that she was being watched all the time. When Ms. Llanto used the phone, either Mr. or Mrs. Sheta would monitor her phone conversations. Mrs. Llanto's use of the telephone was restricted, and she was only able to speak to the father of her son and her son in the Philippines approximately three times throughout her employment.

27.     In or around the summer of 2014, Ms. Llanto's family called Mr. Sheta to confirm that Ms. Llanto was safe because they had not heard from her for an extended period of time. When Ms. Llanto talked with her family member on the phone, this discussion was monitored, and Ms. Llanto was unable to speak about the harsh and unexpected working conditions she was experiencing in the Shetas' household because she feared punishment.

28.     In or around May of 2014, Mrs. Sheta gave birth to her seventh child, and the workload, hours, and treatment of Ms. Llanto subsequently worsened. Ms. Llanto was made responsible for the newborn in addition to her other duties and was forced to care for the newborn and second-youngest infant regularly during the night. As a result, Ms. Llanto's hours increased from approximately 6 AM to approximately 2 or 3 AM every night, and she was regularly kept awake caring for the children throughout the night. As a result, Ms. Llanto was physically, mentally, and emotionally exhausted.

29.     Mrs. Sheta also began verbally abusing Ms. Llanto by yelling personal insults at Ms. Llanto. These insults included calling her "stupid" and "slow," often in front of tutors, house guests, and Mrs. Sheta's friends. This behavior caused embarrassment and further emotional distress to Ms. Llanto.

30.     In or around the fall of 2014, Mrs. Sheta began physically abusing Ms. Llanto. On a regular basis, Mrs. Sheta would pinch Ms. Llanto when she was upset with her, resulting in

visible bruises that would not heal for weeks. In the fall of 2014, Mrs. Sheta threw a heavy remote control at Ms. Llanto's chest when she did not like the taste of something that Ms. Llanto cooked, leaving a visible mark on Ms. Llanto.

31.    Also in or around the fall of 2014, Mrs. Sheta pinched Ms. Llanto on the arm when she claimed Ms. Llanto did not clean a table exactly as Mrs. Sheta wanted.

32.    In or about November 2014, Mrs. Sheta also pinched Ms. Llanto on the arm when she blamed Ms. Llanto for leaving a fruit cocktail at home during a visit to Mrs. Sheta's friend's house. This bruise lasted for more than one month.

33.    In or about early December 2014, Mrs. Sheta pinched Ms. Llanto on the arm, yelled at her, and slapped her on the back because she blamed her for not coming quickly enough when she was called, although Ms. Llanto was busy caring for the newborn. These bruises also took a very long time to heal.

## The Shetas' Violations of Anti-Trafficking Statutes and Federal and New York Employment Laws

34.    From the time Ms. Llanto arrived in the United States, on or around October 4, 2013, to November 2013, the Shetas did not pay Ms. Llanto anything for her work.  Ms. Llanto told Mr. Sheta that she needed to be paid because her family needed money very badly. Mr. Sheta then transferred 900 Riyal directly to the father of Ms. Llanto's child in the Philippines.  After that, Ms. Llanto continued to ask Mr. Sheta for her pay, but he would often rebuff her, saying that his family needed the money so he could not pay her.

35.    Ms. Llanto was compensated with only a total of 4500 Riyal (approximately US$ 1,235) for over fourteen months of work for the Shetas. This compensation was made in five separate payments of 900 Riyal made directly to Ms. Llanto's family in the Philippines in or around November 2013, and January, May, June and September of 2014. For the more than

8,300 hours of work Ms. Llanto performed for the Shetas, she was therefore paid less than 15 cents / hour. Ms. Llanto was not given receipts or any kind of wage statements for these payments.

36.     Because these payments were sent directly to the father of Ms. Llanto's son in the Philippines, Ms. Llanto did not have access to any money of her own while working for the Shetas.

37.     Defendants never gave Ms. Llanto any written employment contract or statement describing her employment, including any statement listing her wages, hours, or any terms of employment. Ms. Llanto had no notice of her rights and, as a foreigner working in the United States with limited English ability, was completely unaware of the FLSA or the New York Labor Law and any of their minimum wage or overtime provisions.

**Intervention of Federal and State Officers**

38.     On the morning of December 17, 2014, federal agents came to the Shetas' residence while Mr. Sheta was dropping the older children off at school and Mrs. Sheta and the younger children were sleeping.

39.     When Ms. Llanto opened the door, the agents asked to speak to her. The agent and officer observed one of the large bruises on Ms. Llanto's arm from when Mrs. Sheta pinched her and, when they asked, Ms. Llanto told them that Mrs. Sheta had been abusing her. The agent gave Ms. Llanto his card and left after their conversation.

40.     Several hours later, the agents returned with two New York Police officers. The officers communicated with Ms. Llanto through a Tagalog translator, available on the telephone. The officers directed Mrs. Sheta to give them Ms. Llanto's passport and escorted Ms. Llanto while she collected her things and left the house.

41.     After leaving the Shetas' residence, Ms. Llanto was escorted by the officers to the offices of Safe Horizon, an organization supporting victims of abuse, where she was provided with food and clothing.

### FIRST CLAIM FOR RELIEF

**Involuntary Servitude in Violation of 18 U.S.C. §§ 1584, 1595**

**(Against Both Defendants)**

42.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

43.     Under 18 U.S.C. § 1584, it is unlawful to "knowingly and willfully hold[] to involuntary servitude . . . or bring[] within the United States any person so held."

44.     "Involuntary servitude" includes "a condition of servitude induced by means of . . . any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or . . . the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(6).

45.     In violation of 18 U.S.C. § 1584, Defendants brought Ms. Llanto to the United States for the purpose of involuntary servitude and knowingly and willfully subjected Ms. Llanto to a condition of involuntary servitude for over fourteen months in the United States by leading her to believe she would suffer serious physical, financial, and/or legal harm if she did not continue to work for Defendants. Defendants also abused the legal process to control Ms. Llanto by procuring and presenting fraudulent documents to the U.S. Embassy to obtain her visa.

46.     Defendants' threats, abuse and coercion caused Ms. Llanto to reasonably believe that she had no choice but to continue working for Defendants.

47.     Ms. Llanto brings this claim for relief pursuant to the private right of action granted by 18 U.S.C. § 1595.

48.     As a direct and proximate result of Defendants' actions, Ms. Llanto has suffered damages in an amount to be established at trial.

49.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

**Forced Labor in Violation of 18 U.S.C. §§ 1589, 1595**

**(Against Both Defendants)**

50.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51.     Under 18 U.S.C. § 1589, it is unlawful to "knowingly provid[e] or obtain[] the labor or services of a person . . . (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

52.     As alleged herein, Defendants knowingly provided or obtained Ms. Llanto's services as a domestic worker by abuse of law or legal process and through a scheme to make Ms. Llanto believe that she would suffer serious harm if she did not continue to provide services to Defendants.

53. Defendants knowingly provided or obtained Ms. Llanto's services by means of physical restraint by confiscating her passport, requiring her to remain within the residence, monitoring her movements within the residence, and subjecting her to physical and verbal abuse.

54. Defendants knowingly threatened Ms. Llanto with serious harm by telling her that, were she to leave the residence, Ms. Llanto would be arrested by the police.

55. Defendants knowingly implemented a scheme, plan or pattern intended to cause Ms. Llanto to believe that, if she did not perform domestic services for them, she would suffer serious harm by depriving her of her liberty by confiscating her passport, requiring her to remain within the residence, restricting and monitoring her communications with others, monitoring her movements within the residence, failing to pay her wages due, telling her that she would be arrested by the police if she were to leave the residence, and through repeated physical and verbal abuse.

56. Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589(a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means."

57. Defendants knowingly benefited, financially or by receiving value, from participation in a venture which they knew or should have known engaged in violations of 18 U.S.C. § 1589, namely Ms. Llanto's services for almost no compensation.

58. Ms. Llanto brings this claim for relief pursuant to 18 U.S.C. § 1595.

59. As a direct and proximate result of Defendants' actions, Ms. Llanto has suffered damages in an amount to be established at trial.

60.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1590, 1595

### (Against Both Defendants)

61.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.     Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[], transport[], provid[e], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

63.     Defendants knowingly recruited, transported, harbored, provided and/or obtained Ms. Llanto, bringing her to the United States for the purpose of involuntary servitude and forced labor in violation of 18 U.S.C. §§ 1589 and 1592, and therefore violated 18 U.S.C. § 1590.

64.     Defendants knowingly violated the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and (b).

65.     Ms. Llanto brings this claim for relief pursuant to 18 U.S.C. § 1595.

66.     As a direct and proximate result of Defendants' actions, Ms. Llanto has suffered damages in an amount to be determined at trial.

67.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

**Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1592, 1595**

**(Against Both Defendants)**

68.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.     Pursuant to 18 U.S.C. § 1592(a), it is unlawful to "knowingly destroy[], conceal[], remove[], confiscat[e], or possess[] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person . . . in the course of a violation of . . . [or] with intent to violate [the provisions under the Trafficking Victims Protection Reauthorization Acts prohibiting trafficking, peonage, slavery, involuntary servitude, or forced labor]; or . . . to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons."

70.     Pursuant to 22 U.S.C. § 7102(9)(B), "severe forms of trafficking in persons" includes "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

71.     Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passport in the course of a violation of and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590.

72.     Defendants knowingly confiscated and possessed Ms. Llanto's passport to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Ms. Llanto's liberty to move or to travel in order to maintain her labor or services.

73.     At the time Defendants restricted Ms. Llanto's liberty, Ms. Llanto was a victim of a severe form of trafficking.

74.     Ms. Llanto brings this claim for relief pursuant to 18 U.S.C. § 1595.

75.     As a direct and proximate result of the conduct of Defendants, Ms. Llanto has suffered injuries to her person and property, and other damages.

76.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

**Benefitting Financially from Trafficking in Persons in Violation of
18 U.S.C. §§ 1593A, 1595**

**(Against Both Defendants)**

77.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     18 U.S.C. § 1593A makes it unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any activity in violation of section … 1592 or 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation" to the same extent "as a completed violation of such section."

79.     Defendants knowingly benefitted financially or by receiving something of value, namely Ms. Llanto's domestic worker services, from participation in a venture that

engaged in activities in violation of 18 U.S.C. §§ 1592 and 1595(a) and either knew or was in reckless disregard of the violations of these provisions.

80.     Ms. Llanto brings this claim for relief pursuant to 18 U.S.C. § 1595.

81.     As a direct and proximate result of the conduct of Defendants, Ms. Llanto has suffered injuries to her person and other damages.

82.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, 1592, 1594, 1595

### (Against Both Defendants)

83.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.     18 U.S.C. § 1594(b) makes it unlawful to "conspire[] with another to violate section … 1589, 1590, or 1592."

85.     Defendants conspired to violate 18 U.S.C. §§ 1589, 1590 and 1592 by agreeing to obtain or provide Ms. Llanto's services in violation of 18 U.S.C. § 1589, trafficking Ms. Llanto in violation of 18 U.S.C. § 1590, and withholding documents from Ms. Llanto in violation of 18 U.S.C. § 1592. Defendants came to an understanding to commit these violations through the course of their dealings.

86.     Ms. Llanto brings this claim for relief pursuant to 18 U.S.C. § 1595.

87.     As a direct and proximate result of the conduct of Defendants, Ms. Llanto has suffered injuries to her person and other damages.

88.     Ms. Llanto is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF

### Fair Labor Standards Act (FLSA) Minimum Wage Violation
### 29 U.S.C. § 201 *et seq.*

### (Against Both Defendants)

89.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     Section 6(a) of the FLSA, 29 U.S.C. § 206(f), provides that any domestic service employee employed in one or more households and is employed more than eight hours per week shall be paid wages at the federal minimum wage rate during the period of employment. For all periods of Ms. Llanto's employment, the federal minimum wage rate was $7.25 per hour. 29 U.S.C. § 206(a).

91.     In all periods of Ms. Llanto's employment, she worked in Defendants' household for more than eight hours per week.

92.     In all periods of Ms. Llanto's employment, Defendants knowingly paid Ms. Llanto an hourly rate far less than the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

93.     Defendants' failure to pay required compensation was willful within the meaning of 29 U.S.C. § 255(a).

94.     Defendants did not act in good faith when they failed to comply with federal minimum wage law.

95.     Defendants' willful and intentional failure to pay Ms. Llanto the minimum wage violates 19 U.S.C. § 201 *et seq.* and U.S. Department of Labor regulations. Ms. Llanto is

entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, prejudgment interest, liquidated damages, attorneys' fees, and costs.

## EIGHTH CLAIM FOR RELIEF

### New York State Minimum Wage Violations
### N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*

#### (Against Both Defendants)

96.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97.     The New York Labor Law requires employers to pay a minimum hourly wage for covered employees in New York State. N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 142-2.1.

98.     At all times relevant to this action, Ms. Llanto was an employee covered by state minimum wage law. N.Y. Lab. L. §§ 2, 651-652; 12 N.Y.C.R.R. § 142-2.1.

99.     At all times relevant to this action, Defendants employed Ms. Llanto within the meaning of New York Labor Law §§ 2 and 651.

100.     At all times relevant to this action, Defendants were employers within the meaning of New York Labor Law. N.Y. Lab. L. §§ 2, 651.

101.     In all periods of Ms. Llanto's employment, Defendants failed to pay Ms. Llanto the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 *et seq.*

102.     During Ms. Llanto's employment, the New York State minimum wage was $7.15 per hour between October 4, 2013 and December 30, 2013, and $8.00 per hour from December 31, 2013 to December 17, 2014. N.Y. Lab. L. § 652.

103.     Defendants failure to pay Ms. Llanto the minimum wage was willful and/or not in good faith.

104.    Ms. Llanto is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage she should have been paid, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## NINTH CLAIM FOR RELIEF

**New York State Overtime Violation**
**N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2**

**(Against Both Defendants)**

105.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    Defendants failed to pay Ms. Llanto overtime pay for her work in excess of forty-four (44) hours per week, as required for a residential employee in violation of New York Labor Law §§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

107.    Defendants' failure to pay Ms. Llanto overtime pay was willful and/or not in good faith.

108.    Ms. Llanto is entitled to an award of damages for overtime pay for each hour she worked over forty-four (44) hours per week in an amount equal to the proper overtime pay she should have been paid, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## TENTH CLAIM FOR RELIEF

**New York Labor Law, Spread-of-Hours Pay**
**N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.4**

**(Against Both Defendants)**

109.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    Defendants failed to pay Ms. Llanto an extra hour's pay at the rate of the minimum wage for every day that she worked in which the interval between her start and end time exceeded ten hours, in violation of N.Y. Lab. L. §§ 190 *et seq.* and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

111.    Defendants' failure to pay Ms. Llanto spread-of-hours pay was willful and/or not in good faith.

112.    Ms. Llanto is entitled to an award of an extra hour's pay for every day that she worked in excess of ten hours, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## ELEVENTH CLAIM FOR RELIEF

### New York Labor Law, Frequency of Payment
### N.Y. Lab. L. § 191(1)(a)(i)

### (Against Both Defendants)

113.    Plaintiff realleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

114.    New York Labor Law requires employers to pay manual laborers each week. N.Y. Lab. L. § 191(1)(a)(i).

115.    Ms. Llanto did not receive payment of wages within seven calendar days after the end of the week in which the wages were earned, in violation of N.Y. Lab. L. § 191(1)(a)(i).

116.    Defendant's failure to pay the promised wages with lawful frequency was willful and/or not in good faith.

117.    Ms. Llanto is entitled to any underpayment suffered, prejudgment interest, liquidated damages, and attorneys' fees and costs.

## TWELTH CLAIM FOR RELIEF

### New York Labor Law, Notice and Record-Keeping
### N.Y. Lab. L. § 195

#### (Against Both Defendants)

118.    Plaintiff realleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

119.    Employers are required to provide, at the time of hire, "the rate or rates of pay and the basis of the rate, whether they are paid by the hour, shift, day, week, salary, piece, commission or other and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances," among other things. N.Y. Lab. L. § 195(1)(a). This notice must be given in the employee's primary language. *Id.*

120.    Employers must obtain and preserve for six years written acknowledgement that such notice was provided. *Id.*

121.    Employers are also required to "furnish each employee with a statement with every payment of wages listing . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission or other; gross wages, deductions, allowances, if any" among other things. *Id.* at § 195(3).

122.    Defendants failed to provide Ms. Llanto the notice of her rights upon hire and wage statements that complied with New York Labor Law. Defendants failed to obtain written acknowledgement from Plaintiff of notice.

123.    Defendants' failure to provide Ms. Llanto notice of her rate of pay and legally adequate wage statements was willful and not in good faith.

124. Ms. Llanto is entitled to damages of fifty dollars for each day that she did not receive the notice required by N.Y. Lab. L. § 195(1)(a), attorneys' fees and costs, together not to exceed $5,000, and injunctive and declaratory relief. *Id*. at § 198(1-b).

125. Ms. Llanto is entitled to damages of two-hundred and fifty dollars for each week that she did not receive the notice required by N.Y. Lab. L. § 195(3)(a), attorneys' costs and fees, together not to exceed $5,000 and injunctive and declaratory relief. *Id*. at § 198(1-d).

## THIRTEENTH CLAIM FOR RELIEF

### New York State Failure to Pay Promised Wages
### N.Y. Lab. L. §§ 190 *et seq.*

### (Against Both Defendants)

126. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

127. The New York Labor Law requires employers to pay promised wages for every hour worked. N.Y. Lab. L. §§ 190, 191, *et seq.*

128. Defendants failed to pay Ms. Llanto the promised wage of US $ 12.35 per hour and the corresponding overtime rate for hours over forty (44) per week, at $18.53 per hour.

129. Defendants' failure to pay Ms. Llanto the promised wages was willful and/or not in good faith.

130. Ms. Llanto is entitled to her promised wages, liquidated damages, prejudgment interest, attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against Both Defendants)

131.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    Defendants acted intentionally and in an outrageous or intolerable manner to intentionally inflict emotional injury on Ms. Llanto by trafficking Ms. Llanto from the Philippines to the United States through Qatar, confiscating her passport, monitoring all of her movements and phone conversations, limiting her contact with the father of her son or her son in the Philippines, refusing to pay her a decent wage, regularly insulting her and calling her stupid, and physically abusing her.

133.    Defendants' conduct was extreme, outrageous, and intolerable in a way that would offend the generally accepted standards of decency and morality.

134.    Defendants' conduct caused Ms. Llanto severe emotional distress. Defendants' conduct caused Ms. Llanto to be afraid of Defendants, to be afraid for her physical safety, and to feel humiliated.

135.    Defendants committed these acts maliciously and oppressively, with the wrongful intention of causing harm to Ms. Llanto, and in conscious disregard of Ms. Llanto's rights.

136.    As a direct and proximate result of Defendants' intentional actions, Ms. Llanto has suffered and continues to suffer severe mental distress, emotional injuries, humiliation, embarrassment, and economic loss.

137.    Ms. Llanto is entitled to recover damages in an amount to be determined at trial, including punitive damages, attorneys' fees, and the costs of this action.

## FIFTEENTH CLAIM FOR RELIEF

### Battery

### (Against Defendant Mrs. Sheta)

138.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.    Defendant Mrs. Sheta intentionally, offensively, and wrongfully touched Ms. Llanto without her consent on or around the fall of 2014 when Defendant Mrs. Sheta pinched Ms. Llanto after claiming that Ms. Llanto had not cleaned the table exactly as Mrs. Sheta wanted her to, and on or around the fall of 2014 when Mrs. Sheta pinched Ms. Llanto on her upper arm after blaming Ms. Llanto for leaving a fruit cocktail at home when the family attended a party at a friend's house.

140.    This contact was wrongful and offensive in that a reasonable person would find it offensive to their personal dignity, and resulted in physical harm to Ms. Llanto's arm.

141.    Defendant Mrs. Sheta intentionally, offensively and wrongfully touched Ms. Llanto without her consent on or around the fall of 2014 when Defendant Mrs. Sheta threw a heavy remote control at Ms. Llanto's chest after claiming that Ms. Llanto had not cleaned the table exactly as Mrs. Sheta instructed.

142.    This contact was wrongful and offensive in that a reasonable person would find it offensive to their personal dignity, and resulted in physical harm to Ms. Llanto's chest.

143.    Defendant Mrs. Sheta intentionally, offensively and wrongfully touched Ms. Llanto without her consent on or around early December 2014 when she pinched Ms. Llanto on the arm and slapped her on the back after blaming Ms. Llanto for not coming quickly enough when she called to her.

144.    This contact was wrongful and offensive in that a reasonable person would find it offensive to their personal dignity and resulted in physical harm to Ms. Llanto's arm and back.

145.    Defendant Mrs. Sheta's actions were intentional in that she had personal knowledge to a substantial certainty that harmful or offensive contact would result from her actions.

146.    Defendant Mrs. Sheta's actions were committed with a conscious and deliberate disregard of the interests of others such that her conduct may be called willful or wanton.

## SIXTEENTH CLAIM FOR RELIEF

### False Imprisonment

### (Against Both Defendants)

147.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

148.    Defendants knowingly and intentionally confined Plaintiff within their home by threats of physical harm, legal coercion and constant verbal abuse so as to deprive Plaintiff of her freedom of movement.

149.    Plaintiff was conscious of being confined and did not consent to her confinement.

150.    As a consequence of Defendant's threats and constant verbal abuse, Plaintiff was confined to Defendant's home, and there was no reasonable means of escape that Plaintiff could reasonably discover.

151.    Defendants confined Plaintiff knowingly and willfully and with malice and reckless disregard for her rights.

152.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial lost wages and severe pain and suffering, including emotional distress, physical pain, humiliation, and embarrassment.

153.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

**SEVENTEENTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**(Against Both Defendants)**

154.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

155.    Plaintiff rendered services as a live-in domestic servant, cook and nanny in good faith and with the expectation that she would be fairly compensated for such services.

156.    Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

157.    Defendants have been unjustly enriched at Plaintiff's expense.

158.    Defendants consciously or recklessly disregarded Plaintiff's rights.

159.    Equity and good conscience require restitution to Plaintiff for the reasonable value of these services.

160.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## EIGHTEENTH CLAIM FOR RELIEF

### Quantum Meruit (In the Alternative)

### (Against Both Defendants)

161.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

162.    Plaintiff rendered services as a live-in domestic servant, cook and nanny in good faith and with the expectation that she would be fairly compensated for such services.

163.    Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

164.    Defendants have benefited from these services at Plaintiff's expense.

165.    Defendants consciously and recklessly disregarded the Plaintiff's rights.

166.    Plaintiff should be compensated in quantum meruit in an amount to be proven at trial.

## NINETEENTH CLAIM FOR RELIEF

### Fraud

### (Against Both Defendants)

167.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

168.    During the time the Plaintiff worked for Defendants, Defendants intentionally and knowingly made false representations and material omissions of fact to Plaintiff regarding her labor and her rights under American law. Defendant Mr. Sheta induced Plaintiff to work for Defendants in the United States by representing to Plaintiff they would pay her for her labor at a rate of 900 Riyal per week when, in fact, he had no intention of doing so.  Defendant Mrs. Sheta

induced Plaintiff to continue to work for Defendants in the United States by telling her they would pay her for her labor at a rate of 1800 Riyal per week, when, in fact, they had no intention of doing so. Defendant Mrs. Sheta also induced Plaintiff to stay by misrepresenting to Plaintiff that she would be arrested if she ever left the house alone, and causing Plaintiff to fear arrest.

169. Defendants induced Plaintiff to stay with them and work for them for no wages, or for less than promised, knowing that Plaintiff would rely on their misrepresentations and intending that their misrepresentations would induce Plaintiff to continue to work for them.

170. Plaintiff did in fact rely on Defendants' misrepresentations to her detriment and as a result was forced to work as a domestic servant for Defendants for little to no pay. Plaintiff's reliance on Defendants' threats and promises was reasonable given her extreme isolation and lack of knowledge about the American legal system.

171. As a result of these misrepresentation and material omissions of fact made by Defendants, Plaintiff endured the physical and psychological abuse that accompanied this situation of involuntary servitude at great psychological and financial detriment.

172. At the time that Defendants made the foregoing misrepresentations, material omissions of fact, and promises to the Plaintiff, they had no intention of carrying out such promises and knew that their warnings were false.

173. As the direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial lost wages and severe pain and suffering, including emotional distress, physical pain, humiliation and embarrassment.

174. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## TWENTIETH CLAIM FOR RELIEF

### Breach of Contract

### (Against Both Defendants)

175.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

176.    Plaintiff and Defendants entered into an oral agreement, whereby Plaintiff agreed to work for Defendants, and Defendants agreed to pay Plaintiff 1800 Riyals per week (approximately US$ 494 per week), among other promises.

177.    Plaintiff adequately performed her obligations under the oral agreement.

178.    Defendants breached the terms of the Parties' oral contract.

179.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief, in amounts to be determined at trial, on each count detailed above:

1. Declaring that Defendants violated the Fair Labor Standards Act, the New York Labor Law, and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008;

2. Awarding Plaintiff restitution in the full amount of her losses, punitive and compensatory damages for pain and suffering, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

3. Awarding Plaintiff unpaid minimum wages in an amount equal to the federal minimum wage she should have been paid, liquidated damages, and attorneys' fees, and costs, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;

4. Awarding Plaintiff unpaid wages, including promised wages, minimum wages, overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

5. Awarding Plaintiff statutory damages of up to $10,000 for Defendants' failure to provide Plaintiff with required notices pursuant to New York Labor Law §§ 195(1) & 195(3);

6. Awarding Plaintiff damages due to intentional infliction of emotional distress, battery, false imprisonment, fraud, and breach of contract, unjust enrichment and/or (in the alternative) quantum meruit;

7. Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law; and

8. Awarding Plaintiff other legal and equitable relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated:   New York, New York
         March 1, 2017

Respectfully submitted,

/s/ Hilary Harris Klein_____

FRESHFIELDS BRUCKHAUS DERINGER US LLP

Aaron R. Marcu
Hilary Harris Klein
601 Lexington Ave., 31st Floor
New York, NY 10022
Telephone: (212) 508 8822
aaron.marcu@freshfields.com
hilary.harris@freshfields.com

**THE LEGAL AID SOCIETY**
Seymour W. James, Jr., *Attorney-in-Chief*
Adriene Holder, *Attorney-in-Charge, Civil Practice*
Karen Cacace, *Director, Employment Law Unit*
Sumani Lanka, *Staff Attorney, Employment Law Unit*
199 Water Street, 3rd Floor
New York, New York 10038
Telephone: (212) 577-3300

*Attorneys for Plaintiff*